**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM H. SMALLWOOD, JR.<br>2207 East 1980 Road<br>Antlers, Oklahoma 74523<br><br>individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOM VILSACK, in his official capacity as<br>Secretary of Agriculture<br>1400 Independence Ave SW<br>Washington, DC 20250<br><br>and<br><br>LORETTA LYNCH, in her official capacity as<br>Attorney General of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>Defendants. | Case No. 1:16-cv-0161<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

**CLASS ACTION COMPLAINT**

(For Declaratory and Equitable Relief)

Plaintiff William H. Smallwood, Jr., individually and on behalf of others similarly situated, by and through undersigned counsel, hereby seeks declaratory and equitable relief from the defendants' unconstitutional and *ultra vires* acts.

**NATURE OF THE CASE**

1.      This is a class action lawsuit against Tom Vilsack in his official capacity as Secretary of Agriculture (the "Secretary") and Loretta Lynch in her official capacity as Attorney General of the United States (collectively "Defendants").

2.      Plaintiff William H. Smallwood, Jr. ("Plaintiff"), individually and on behalf of others similarly situated, seeks declaratory and equitable relief from Defendants'

1

unconstitutional and *ultra vires* acts related to the unlawful payment of over $380,000,000 via the *cy pres* provisions of the settlement agreement ("Settlement Agreement")[1] in *Marilyn Keepseagle v. Tom Vilsack, Secretary, United States Department of Agriculture*, Case No. 1:99-cv-03119-EGS (U.S.D.C. District of Columbia) ("*Keepseagle*") to uninjured, non-party corporations, entities, and other persons in violation of the Appropriations Clause, U.S. Const. Art. I, § 9, cl. 7 and the Judgment Fund, 31 U.S.C. § 1304.

3.  This huge sum of over $380,000,000 was taken from the Judgment Fund to settle the meritorious claims of Native American farmers and ranchers who suffered unlawful discrimination at the hands of the United States Department of Agriculture ("USDA") and, accordingly, belongs to them.

4.  The *Keepseagle* settlement fund was $680 million. [K. ECF 576-1, Settlement Agreement]. Approximately $61 million was paid to class counsel. Approximately $56 million was paid to the U.S. Internal Revenue Service ("IRS"). And the Native American farmers and ranchers who demonstrated unlawful discrimination at the hands of USDA received approximately $183 million. [K. ECF 646, Status Report at pp. 2-3].

5.  Contrary to constitutional right, power, privilege, and/or immunity; in excess of statutory jurisdiction, authority, or limitations; and short of statutory right, Defendants agreed to pay over $380,000,000 to corporations, entities, and other persons which/who: are not *Keepseagle* class members; have no standing in *Keepseagle*; are without injuries; and lack cognizable claims against the United States as addressed in the *Keepseagle* Settlement.

---

[1] The original *Keepseagle* settlement agreement was filed in October of 2010. [K. ECF 570]. On November 1, 2010, a revised *Keepseagle* settlement agreement [K. ECF 576-1] was filed and approved by the court [K. ECF 577, Order]. For purposes of this Complaint, the revised settlement agreement is referred to as the "Settlement Agreement." K. ECF refers to the *Keepseagle* docket. Page references are to the ECF pagination.

6. Defendants, using taxpayer money appropriated by Congress to pay lawful judgments, awards, and compromise settlements, have unlawfully gifted a roughly $380 million windfall to undeserving persons/entities which are not *Keepseagle* class members at the expense of the Native American farmers and ranchers who, pursuant to the conditions of the Settlement Agreement, adequately demonstrated they were victimized by USDA's invidious discrimination.

## JURISDICTION AND VENUE

7. Jurisdiction arises under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory judgment), and 5 U.S.C. § 702 (judicial review for a person suffering legal wrong because of agency action).

8. The relief requested is authorized by 28 U.S.C. §§ 2201 and 2412, 5 U.S.C. § 706, and U.S. Const. Art. III.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff is a member of the Choctaw Nation of Oklahoma and a member of the class certified in *Keepseagle*. He is a "Prevailing Claimant" under the *Keepseagle* Settlement Agreement and received an award under the Non-Judicial Claims Process referenced in the Settlement Agreement. [K. ECF 576-1, Settlement Agreement at pp. 17-35].

11. Defendant Vilsack is the Secretary of Agriculture and leads USDA. He is a defendant in *Keepseagle*.

12. Defendant Lynch is the Attorney General of the United States and leads the Department of Justice ("DOJ"). DOJ is counsel to USDA in *Keepseagle* and responsible for negotiating, approving, ensuring the legality of, and implementing the Settlement Agreement.

## FACTS

### The *Keepseagle* Class Action

13. At all times relevant, USDA was a defendant in the *Keepseagle* class action and represented by DOJ.

14. On November 24, 1999, the *Keepseagle* lawsuit was filed against USDA for unlawful and invidious discrimination against Native American ranchers and farmers in the administration of the farm loan program. [K. ECF 1, Complaint].

15. *Keepseagle* plaintiffs sought monetary and equitable relief available under the Equal Credit Opportunity Act ("ECOA"), including revenues and other economic and non-economic damages and equitable relief. [K. ECF 460, Eighth Amended Complaint at pp. 36-38].

16. On April 10, 2000, *Keepseagle* plaintiffs moved for class certification under Fed. R. Civ. Proc. 23(b)(2). [K. ECF 17, Motion for Class Certification]. On December 12, 2001, the court granted class certification. [K. ECF 134, Order].

17. The certified class consisted of "[a]ll persons who are Native American farmers and ranchers, who (1) farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999; (2) applied to the USDA for participation in a farm program during that period; and (3) filed a discrimination complaint with the USDA either individually or through a representative with regard to alleged discrimination that occurred during the same time period." [K. ECF 577, Order Granting Preliminary Approval at p. 2].

18. On December 4, 2009, *Keepseagle* plaintiffs moved for certification of a damages class under Fed. R. Civ. Proc. 23(b)(3). [K. ECF 551, Motion for Class Certification].

### **The *Keepseagle* Settlement**

19. On October 19, 2010, *Keepseagle* plaintiffs filed a Notice of Settlement and an executed Settlement Agreement. [K. ECF 570, Notice].

20. On November 1, 2010, a revised *Keepseagle* Settlement Agreement [K. ECF 576-1, Settlement Agreement] was filed and approved by the court [K. ECF 577, Order]. It provided for a Total Compensation Fund of $680,000,000 drawn from the Judgment Fund, 31 U.S.C. § 1304. *Id.* at pp. 15-16.

21. Title 31 U.S.C. § 1304 was enacted by Congress as a permanent indefinite appropriation for the payment of specified judgments, awards, and lawful compromise settlements against the United States.

22. The amount of the Total Compensation Fund was supported by the Final Expert Rebuttal Report of *Keepseagle* plaintiffs' expert, Patrick M. O'Brien. He opined that from 1981 to 2007 Native Americans were treated less favorably by USDA under the farm loan program with statistically significant differences in treatment across all elements of the program. Mr. O'Brien concluded that USDA's shortfalls in loans and loan servicing resulted in significant economic losses to the affected Native American farmers and ranchers. He <u>conservatively</u> estimated those losses to be in the range of $608 million to $776 million. [K. ECF 551-4, O'Brien Report at pp. 5-10].

### **The *Keepseagle* Settlement Agreement**

23. The Settlement Agreement required Native American farmers and ranchers to choose between two claim tracks — Track A or Track B. Subject to certain conditions, each Track A Claimant was eligible to receive a maximum payment of $50,000, and each Track B Claimant was eligible to receive a payment of up to $250,000. [K. ECF 576-1, Settlement

Agreement at p. 10]. The amount available from the Total Compensation Fund to pay Track B claims was capped at $50,000,000. *Id.* at p. 11.

24.USDA required each Track A claimant to prove his/her claim by substantial evidence before receiving any compensation. *Id.* at pp. 25-26.

25.USDA required each Track B claimant to prove his/her claim by a preponderance of the evidence before receiving any compensation. *Id.* at pp. 26-27.

26.As a condition of settlement, class counsel and USDA agreed that the *Keepseagle* class members had to move for dismissal of the case with prejudice to be effective on the Final Approval Date. *Id.* at pp. 13-14. The Final Approval Date was the date on which the court entered an order providing final approval of the Settlement Agreement. *Id.* at p. 7. The Effective Date of the Settlement was the date upon which an order providing final approval of the Settlement became non-appealable, or, in the event of any appeals, upon the date of final resolution of said appeals. *Id.* at p. 6. *Keepseagle* class members then had 180 days from the Effective Date of the Settlement Agreement to submit their claims. *Id.* at p. 4.

27.The Settlement Agreement, therefore, provided that the outcome of the claims process would remain unknown to *Keepseagle* class members until after the case was dismissed with prejudice, the Settlement was final, and the time to appeal had run. This prevented the *Keepseagle* class members, none of whom were fully compensated for USDA's decades of discrimination, from raising timely objections to the claims process, and also denied them the opportunity to seek a supplemental distribution from the undistributed funds in the Total Compensation Fund.

28.The end result was that the time to appeal from the final judgment had run by the time any *Keepseagle* claimant received a payment under the claims process.

### **The *Cy Pres* Provisions**

29. The Settlement Agreement contained the following *cy pres* provisions:

**Section II: DEFINITIONS**

I. "Cy Pres Beneficiary" is any non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and the Execution Date that will be proposed by Class Counsel and approved by the Court.

J. "Cy Pres Fund" is a fund administered by Class Counsel designated to hold any leftover funds under paragraph 7 in Section IX. F of this Settlement Agreement.

. . .

W. "Final Accounting" is an accounting prepared and signed by the Claims Administrator after all funds in the Designated Account have been disbursed. The Final Accounting shall identify: (1) the number and amount of all awards the Claims Administrator has caused to be paid to Class Members; (2) the Implementation Costs incurred under the Settlement Agreement; and (3) the amount of any leftover funds paid into the Cy Pres Fund. The Final Accounting shall also identify the total amount of implementation funds the Secretary has provided to Class Counsel, for the benefit of the Class, under this Settlement Agreement and the status of these funds.

[K. ECF 576-1, Settlement Agreement at pp. 5-7].

. . .

**Section IX F.    DISTRIBUTION OF CLAIM DETERMINATIONS AND SETTLEMENT FUNDS**

7. In the event there is a balance remaining in the Designated Account after the last check has been cashed, the last check has been invalidated due to passage of time, and after the passage of time set forth in paragraph 7 of Section IX. A, the Claims Administrator shall direct any leftover funds to the Cy Pres Fund. Class Counsel may then designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund. The Claims Administrator shall send to each Beneficiary, via first class mail, postage prepaid, a check in the amount of the Beneficiary's share of the Cy Pres Fund. Designations shall be for the benefit of Native American farmers and ranchers, upon recommendations by Class Counsel and approval by the Court.

[*Id*. at pp. 34-35].

30. The Settlement Agreement allowed class *Keepseagle* counsel to administer the *cy pres* and recommend the beneficiaries. *Id.* at p. 5.

7

### *Keepseagle* Settlement Fund Distributions

31. On October 22, 2010, *Keepseagle* plaintiffs moved for preliminary approval of the Settlement which was granted on November 1, 2010. [K. ECF 571, Motion for Preliminary Approval; K. ECF 577, Order Granting Preliminary Approval].

32. On January 14, 2011, class counsel moved for an award of attorneys' fees and expenses seeking 8% of $760,000,000 or $60,800,000. [K. ECF 581, Motion for Attorneys' Fees at pp. 8-9].

33. The $760,000,000 benchmark was calculated combining the amount of the Total Compensation Fund — $680,000,000.00 — with $80,000,000 in anticipated debt relief from USDA that would be available to *Keepseagle* class members. *Id.* The attorneys' fees and expenses were to be paid from the Total Compensation Fund. [K. ECF 576-1, Settlement Agreement at p. 15].

34. On April 1, 2011, *Keepseagle* plaintiffs moved for final approval of the *Keepseagle* Settlement. [K. ECF 589, Motion for Final Approval].

35. On April 28, 2011, the court held a fairness hearing and thereafter granted final approval of the *Keepseagle* Settlement and awarded class counsel $60,800,000. [K. ECF 606, Order Granting Final Approval].

36. On April 29, 2011, the court entered an order titled "Final Order and Judgment" dismissing the action with prejudice and retaining jurisdiction for five years from the date of entry of the Final Order and Judgment for the purposes set forth in Section XIII of the Settlement Agreement. [2] [K. ECF 607, Final Order and Judgment].

---

[2] Pursuant to Section XIII of the *Keepseagle* Settlement Agreement, the court retains jurisdiction over the *Keepseagle* action for a period of five years from the date of final approval of the Settlement Agreement [K. ECF 576-1 at pp. 41-42].

37. On August 30, 2013, *Keepseagle* class counsel filed a status report ("Status Report") on the claims process reporting only 3,587 successful Track A claimants with awards totaling of $224,187,500, consisting of $179,350,000 in direct payments to class members and $44,837,500 in payments to the IRS; only 14 successful Track B claimants with awards totaling $3,364,647; and leaving $380,000,711.89 in undisbursed funds. [K. ECF 646, Status Report at pp. 2-3].

38. Class counsel said the undisbursed settlement funds far exceeded the amount the parties had anticipated and acknowledged that the enormous difference between the undistributed funds expected and the amount actually available for distribution rendered some of the conditions for the *cy pres* distribution impractical. *Id.* at pp. 4-5.

39. Class counsel informed the court that they intended to propose a modification of the Settlement Agreement to provide for the establishment of a new foundation. The foundation would be endowed by $380,000,000 taken from the Total Compensation Fund — the Fund created to compensate the class members for their damages. The purpose the foundation would be to distribute $380,000,000, together with accrued interest, through grants to corporations, entities, and other persons which/who were not class members, and had neither standing nor claims against the United States in *Keepseagle*. *Id.* at pp. 8-9.

40. Under this modification, fifty-six percent of the Total Compensation Fund ($380,000,000 out of $680,000,000) to settle claims of discrimination by Native American farmers and ranchers against USDA would be given to non-parties, compared to the mere thirty-four percent ($227,552,147 out of $680,000,000) that *Keepseagle* class counsel reported was awarded to the actual victims of the discrimination. [K. ECF, 646, Status Report at pp. 2].

**Objections**

41.     On September 5, 2013, the Choctaw Nation of Oklahoma moved to intervene to challenge this plan [K. ECF 647, Choctaw Motion to Intervene], followed by members of the Great Plains Nation on September 28, 2013 [K. ECF 654, Great Plains Claimants' Motion to Intervene].

42.     On September 24, 2014, *Keepseagle* class counsel filed a motion to modify the Settlement Agreement's *cy pres* provisions pursuant to an addendum agreed to by class counsel and USDA. [K. ECF 709, Motion to Modify Settlement Agreement]. Class Counsel sought immediate distribution of 10% of the undistributed funds to entities meeting certain specified criteria, with the remaining undistributed funds to be placed in trust for the purpose of distributing the money over a period not to exceed 20 years. *Id.*

43.     On November 7, 2014, the motions to intervene filed by the Choctaw Nation and members of the Great Plains Nation were denied. [K. ECF 727, Order Denying Motions to Intervene].

44.     On March 13, 2015, class representative Marilyn Keepseagle, through separate counsel, filed two motions; one to remove certain class representatives [K. ECF 760, Motion to Remove Class Representatives]; and another to compel *Keepseagle* class counsel to produce certain materials relating to the claims administration process. [K. ECF 759, Motion to Compel Listening Session Materials]. Both motions were denied on April 23, 2015. [K. ECF 771, Order].

45.     On May 19, 2015, Marilyn Keepseagle, through separate counsel, filed a Motion to Modify the Settlement Agreement seeking relief from judgment pursuant to Fed. R. Civ. Proc. 60(b)(4) and (b)(5). [K. ECF 779, Keepseagle Motion to Modify]. She asked the court to

modify the Settlement Agreement to either distribute the undisbursed funds *pro rata* to the successful *Keepseagle* claimants or alternatively to create a renewed claims process to distribute more of the money to individual class members victimized by USDA. *Id.* at pp. 6-8.

46. USDA opposed Marilyn Keepseagle's Motion claiming that class members might receive a windfall and that reopening the claims process to make supplemental payments would undermine the government's interest in the finality of court judgments. [K. ECF 786, Vilsack Memorandum in Opposition to Keepseagle Motion to Modify].

47. At a hearing held on June 29, 2015, the court heard from counsel for the parties and from several *Keepseagle* class members regarding distribution of the undistributed settlement funds. [K. ECF 806, Hearing Transcript].

48. On July 24, 2015, the court denied Marilyn Keepseagle's Rule 60(b) motion and the pending motion for modification of the Settlement Agreement and requested that the parties attempt to reach a compromise to address the enormous amount of undistributed settlement funds. [K. ECF 810, Order; *Keepseagle v. Vilsack*, Case No. 99-3119, 2015 U.S. LEXIS 97574 (D. Columbia, Jul. 24, 2015)].

49. On December 14, 2015, class counsel filed Plaintiffs' Unopposed Motion to Modify the Settlement Agreement *Cy Pres* Provisions. [K. ECF 824, Motion to Modify Settlement Agreement].

50. Under this proposal, certain class representatives, Marilyn Keepseagle, Claryca Mandan and Porter Holder, would each receive $100,000 for their service to the class; Prevailing Claimants under the Settlement Agreement would each receive an additional $18,500, the IRS would receive $2,775 on behalf of each Prevailing Claimant; and the remainder of the estimated $380,000,000 would be available for *cy pres* distribution. [K. ECF 824-1, Memorandum in

Support at pp. 8-9]. Ten percent or $38 million would be distributed to unidentified non-profit groups purportedly serving Native American farmers and ranchers prior to November 1, 2010. *Id.* at p. 9. A trust would be created and endowed with the remaining funds to be distributed over a period not to exceed twenty years. *Id.* at p. 9.

51. The result is that over 50% of the $680,000,000 Total Compensation Fund meant to settle discrimination claims of Native American farmers and ranchers against USDA will instead be given to entities that are not *Keepseagle* class members.

52. Class counsel recommended several candidates to serve as trustees of the trust. [K. ECF 824-4, Trust Nominees]. Each trustee is entitled to receive up to $10,000 a year, plus expenses, for each year of service as a trustee. [K. ECF 824-3, Proposed Trust Agreement at p. 10]. Marilyn Keepseagle, Claryca Mandan, and Porter Holder were included among these candidates. [K. ECF 824-4, Trust Nominees].

53. Multiple *Keepseagle* class members, including at least one *Keepseagle* class representative, informed the court that they oppose the December 14, 2015 proposal.

54. By virtue of their December 14, 2015 proposal, Defendants have conceded that supplemental distributions to Prevailing Claimants are economically viable and that no other specific reasons exist that would make further supplemental distributions impossible or unfair.

### ILLEGALITY OF JUDGMENT FUND *CY PRES* DISTRIBUTION

55. Defendants' agreement to *cy pres* distributions of *Keepseagle* settlement funds is unconstitutional, *ultra vires*, invalid, and unenforceable as a violation of 31 U.S.C. § 1304.

56. The money in the Total Compensation Fund of the *Keepseagle* Settlement came from the Judgment Fund, established by 31 U.S.C. § 1304 as a permanent indefinite appropriation for the payment of final judgments, awards, compromise settlements, interest and

costs specified in judgments or otherwise authorized by law when payment is not otherwise provided for and the judgment, award, or settlement is payable "under section 2414, 2517, 2672, or 2677 of title 28."

57. The Judgment Fund does authorize payments to injured parties. It does not authorize the *cy pres* distribution of Judgment Fund monies to non-parties in *Keepseagle*.

58. The *Keepseagle cy pres* provisions, providing for distributions to persons who are not parties or class members in *Keepseagle*, violates the Appropriations Clause, U.S. Const. Art. I, § 9, cl. 7.

59. Appropriations are the sole province of the legislature, and neither the executive nor the judicial branches have been granted such authority by the Constitution.

60. A federal agency cannot do indirectly what it is not permitted to do directly.

61. Defendants, therefore, cannot utilize the Settlement Agreement as an appropriations vehicle for non-parties who lack both standing and injury.

## CLASS ACTION ALLEGATIONS

62. This is a class action brought pursuant to Fed. R. Civ. Proc. 23.

63. Plaintiff seeks appointment as lead plaintiff representing the following class:

> All members of the class certified in the case captioned *Keepseagle v. The United States Department of Agriculture*, Case No. 1:99-cv-03119-EGS, United States District Court for the District of Columbia ("*Keepseagle*") whose claims were approved under the Non-Judicial Claims Process of the *Keepseagle* settlement.

("Class").

## Rule 23(a) Class Certification

64. Certification of the Class is appropriate because all of the prerequisites of Fed. Civ. Rule 23(a) are satisfied.

65. Pursuant to Fed. Civ. Rule Rule 23(a)(1), the members of the Class, which number approximately 3,600 based upon the Status Report filed by *Keepseagle* class counsel on August 30, 2013, [K. ECF 646, Status Report at p. 2], are so numerous that joinder of all members is impracticable.

66. Pursuant to Fed. Civ. Rule 23(a)(2), there are questions of law or fact common to the Class, including but not limited to:

   a. Did Defendants wrongly exceed their constitutional and statutory authority in agreeing to the *cy pres* provisions in the *Keepseagle* Settlement?

   b. Are the *cy pres* provisions of the *Keepseagle* Settlement unenforceable?

   c. Are the monies slated for *cy pres* distribution in *Keepseagle* the property of the Class as defined in this action?

   d. If these monies are the property of the Class defined in this action, should they be distributed equally to the members of the Class?

67. Pursuant to Fed. Civ. Rule 23(a)(3), Plaintiff's claims are typical of those of the Class because the Plaintiff and the members of the Class have suffered harm as a result of Defendants' violation of law as alleged in this Complaint.

68. Pursuant to Fed. Civ. Rule 23(a)(4), Plaintiff seeks to be lead Plaintiff for the Class in this action. He will adequately protect the interests of the Class because he does not appear to have any interests antagonistic to the other Class members, nor does he appear to have any unique claims or defenses that might undermine the efficient resolution of the Class claims. He has retained competent counsel from a law firm well versed in class actions and complex litigation with the necessary resources to pursue this action.

### Rule 23(b)(2) Class Certification

69. Class certification is appropriate under Fed. Civ. Proc. Rule 23(b)(2) because the Defendants have acted or refused to act on grounds that apply generally to the Class so that declaratory and other equitable relief is appropriate respecting the Class as a whole.

### CLAIM FOR RELIEF
### (5 U.S.C. § 706)

70. Plaintiff repeats paragraphs 1 through 69.

71. At all times relevant, Defendants had a nondiscretionary duty to comply with 31 U.S.C. § 1304 and to ensure that monies obtained from the Judgment Fund be paid only to persons authorized to receive said monies under the statute.

72. The *Keepseagle* Settlement Agreement provides at Section VII that the Total Compensation Fund must be paid for the benefit of the class and used solely to pay class members.

73. Plaintiff and the Class as defined in this action, as the Prevailing Claimants under the *Keepseagle* Settlement, are the only persons statutorily authorized to receive the remaining undistributed funds in the Total Compensation Fund.

74. *Cy pres* distribution to non-class members who have not suffered injury due to USDA's unlawful discrimination, who do not have standing in the *Keepseagle* litigation, and who could not have obtained a judgment against the United States in the *Keepseagle* litigation, is unlawful.

75. Such distribution and payments to non-parties violates 31 U.S.C. § 1304 and the Appropriations Clause, U.S. Const. Art. I, § 9, cl. 7.

76. Plaintiff has suffered a legal wrong because Defendants have agreed to the distribution of settlement funds that belong to Plaintiff and the Class, and that were taken from

the Judgment Fund for the purpose of settling the claims of Plaintiff and the Class to non-parties with no injuries, no claims against the United States, and no legal rights in the *Keepseagle* litigation.

77. Defendants' actions as set forth herein are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege and immunity; are in excess of the statutory jurisdiction, authority, or limitations; and/or are short of statutory right.

78. Therefore, the *cy pres* provisions of the Settlement Agreement which authorize payment of the Total Compensation Fund to non-parties should be declared unlawful and unenforceable, and Defendants' agreement thereto *ultra vires*.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief.

a. A determination that this case may be maintained as a class action under Fed. R. Civ. Proc. 23;

b. The appointment of William H. Smallwood, Jr. as lead Plaintiff for the Class;

c. The appointment of undersigned counsel as Class Counsel;

d. A declaration that, as applied in this case, the *cy pres* provisions of the *Keepseagle* Settlement Agreement [and any currently proposed addendum thereto], are unconstitutional and unenforceable because they violate 31 U.S.C. § 1304 and the U. S. Const. Art. I, § 9, cl. 7;

e. A declaration that Defendants' agreement to the *cy pres* provisions of the *Keepseagle* Settlement Agreement [and any currently proposed addendum

thereto], and any payments made pursuant to such provisions, are *ultra vires*, invalid, and unenforceable;

f.  An order prohibiting the distribution of any funds pursuant to the *cy pres* provisions of the *Keepseagle* Settlement Agreement because any such distribution would be unlawful;

g.  A declaration that any funds currently slated for *cy pres* distribution by Defendants under the *Keepseagle* Settlement are the property of the Class as defined in this action and should be restored accordingly;

h.  An order requiring Defendants to restore to the Class its property;

i.  An order awarding attorneys' fees and reasonable costs to Class Counsel;

j.  An order distributing to the Class *per capita* an amount equal to the *Keepseagle* undistributed settlement fund including interest, less attorney's fees and costs; and

k.  Such other relief to which Plaintiff and the Class may be lawfully entitled.

Respectfully submitted,

DINSMORE & SHOHL LLP

/s/William A. Sherman
William A. Sherman (1005932)
Reed D. Rubinstein (400153)
James W. Morrison (374081)
801 Pennsylvania Ave., N.W., Suite 610
Washington, D.C. 20004
Phone: (202) 372-9100
Fax: (202) 372-9141

william.sherman@dinsmore.com
reed.rubinstein@dinsmore.com
james.morrison@dinsmore.com

**Attorneys for**
**Plaintiff William H. Smallwood, Jr.**

10132827v1