# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM H. SMALLWOOD, JR.    ) | |
|                         ) | |
|     Plaintiff,              ) | |
|                         ) | |
|     v.               ) | Civil Action No. 16-161 (RBW) |
|                         ) | |
| SALLY Q. YATES, Acting Attorney  ) | |
| General of the United States,     ) | |
|                         ) | |
|         and           ) | |
|                         ) | |
| MICHAEL YOUNG, Acting Secretary  ) | |
| of the United States Department of    ) | |
| Agriculture,               ) | |
|                         ) | |
|     Defendants.[1]       ) | |
|                         ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, William H. Smallwood, Jr., filed his Class Action Complaint

("Compl.") against Loretta E. Lynch, the former Attorney General of the United States, and

Tom Vilsack, the former Secretary of the United States Department of Agriculture

("USDA"), seeking declaratory and equitable relief under Section 706 of the Administrative

Procedure Act ("APA"), 5 U.S.C. § 706 (2012), based on a settlement agreement between a

class of Native American farmers and the USDA that was approved by another member of

this Court, see Compl. ¶¶ 1–5, 70–78; see also Order on Plaintiffs' Motion for Final Approval

of Settlement, Motion for Approval of Class Representative Service Awards, and Motion for

an Award of Attorneys' Fees and Expenses, <u>Keepseagle v. Vilsack</u>, No. 99-3119 (D.D.C.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Sally Q. Yates and Michael Young have been automatically substituted as the defendants in this matter.

Apr. 28, 2011).[2]  Currently before the Court is the defendants' Motion to Dismiss ("Defs.'

Mot.") and the Plaintiff's Motion for Class Certification and Appointment of Class Counsel

("Pl.'s Class Cert. Mot.").  Upon careful consideration of the parties' submissions,[3] the Court

concludes that it must grant the defendants' motion to dismiss and thus deny the plaintiff's

motion as moot.

## I.       BACKGROUND

### A.       The Original <u>Keepseagle</u> Settlement Agreement

On November 24, 1999, a class of Native American ranchers and farmers filed a class

action lawsuit against the USDA, alleging "unlawful and invidious discrimination . . . in the

[USDA's] administration of the farm loan program."  Compl. ¶ 14.  Judge Emmet G. Sullivan of

this Court certified the case as a class action pursuant to Federal Rule of Civil Procedure

23(b)(2).  <u>See</u> <u>Keepseagle v. Veneman</u>,[4] No. Civ.A.9903119EGS1712, 2001 WL 34676944, at

*1 (D.D.C. Dec. 12, 2001).  The plaintiff, "a member of the Choctaw Nation of Oklahoma," is a

member of the <u>Keepseagle</u> class.  Compl. ¶ 10.

In 2011, the parties in <u>Keepseagle</u> reached a class-wide settlement agreement, which

Judge Sullivan approved after holding a fairness hearing.  <u>See</u> Order, <u>Keepseagle v. Vilsack</u>, No.

99-3119 (D.D.C. Apr. 28, 2011) (granting final approval of the Settlement Agreement); Compl.

---

[2] The Court takes judicial notice of the record in <u>Keepseagle v. Vilsack</u>, No. 99-3119.  <u>See</u> <u>Gomez v. Wilson</u>, 477 F.2d 411, 416 n.28 (D.C. Cir. 1973) (recognizing the "authority to judicially notice the record in other litigation" before the same court).

[3] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Mem."); (2) the plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"); (3) the defendants' Reply in Support of Motion to Dismiss ("Defs.' Reply"); (4) the Memorandum in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel ("Pl.'s Class Cert. Mem."); (5) the Defendants' Opposition to Plaintiff's Motion for Class Certification and Appointment of Class Counsel ("Defs.' Class Cert. Opp'n"); and (6) the Plaintiff's Reply in Support of Motion for Class Certification and Appointment of Class Counsel ("Pl.'s Class Cert. Reply").

[4] Tom Vilsack, current secretary of the USDA, was automatically substituted as the defendant in <u>Keepseagle</u>.  <u>See</u> Fed. R. Civ. P. 25(d).

¶ 35.  The Settlement Agreement "provided for a Total Compensation Fund of $680,000,000 drawn from the Judgment Fund, 31 U.S.C. § 1304 [(2012)]."  Compl. ¶ 20.  Class members could choose between two claim tracks to request a settlement award: "Track A Claimant[s] w[ere] eligible to receive a maximum payment of $50,000, and [ ] Track B Claimant[s] w[ere] eligible to receive a [maximum] payment of . . . $250,000."  Id. ¶ 23.  The plaintiff "received an award under the . . . Settlement Agreement."  Id. ¶ 10.

The Settlement Agreement also contained a cy pres provision, which provided that "the Claims Administrator shall direct any leftover funds to the Cy Pres Fund.  Class Counsel may then designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund."  Id. ¶ 29.  The Settlement Agreement defined a "Cy Pres Beneficiary" as "any non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and the Execution Date [of the Settlement Agreement]."  Id.

"As a condition of settlement, class counsel and USDA agreed that the Keepseagle class members had to move for dismissal of the case with prejudice to be effective on . . . the date on which the court entered an order providing final approval of the Settlement Agreement," id. ¶ 26, which occurred on April 28, 2011, id. ¶ 35.  The class members had 180 days from "the date upon which an order providing final approval of the Settlement became non-appealable" to submit their claims, id. ¶ 26, which occurred on June 27, 2011, see Fed. R. App. P. 4(1)(B)(iii) (stating that a notice of appeal "may be filed by any party within 60 days after entry of the . . . order appealed from if one of the parties is . . . a United States officer or employee sued in an official capacity"); see also Keepseagle v. Vilsack, 307 F.R.D. 233, 238 (D.D.C. 2014) ("No appeal was filed from the Court's approval of the Agreement.").

**B.     The Modified Settlement Agreement**

In August 2013, <u>Keepseagle</u> class counsel informed Judge Sullivan that $380,000,711.89 remained in undisbursed settlement funds, Compl. ¶ 37, and "informed the court that they intended to propose a modification of the Settlement Agreement" to establish "a new foundation" because "some of the conditions for the <u>cy pres</u> distribution [were] impractical" due to the unanticipated larger amount of undisbursed funds, <u>id.</u> ¶¶ 38–39.  Thereafter, the Choctaw Nation of Oklahoma and the Great Plains Nation filed motions to intervene in the <u>Keepseagle</u> action to object to the proposed modification, <u>id.</u> ¶ 41, which Judge Sullivan denied in November 2014, <u>id.</u> ¶ 43; <u>see also</u> <u>Keepseagle</u>, 307 F.R.D. at 249 (denying the motions to intervene on the ground that the putative intervenors lacked standing).

<u>Keepseagle</u> class counsel, as well as class representative Marilyn Keepseagle, through separate counsel, filed motions to modify the Settlement Agreement.  <u>See</u> Compl. ¶¶ 42, 45. Class counsel's motion "sought immediate distribution of 10% of the undistributed funds to entities meeting certain specified criteria, with the remaining undistributed funds to be placed in trust."  <u>Id.</u> ¶ 42.  On the other hand, Ms. Keepseagle's separate motion sought "to either distribute the undisbursed funds <u>pro rata</u> to the successful <u>Keepseagle</u> claimants or alternatively to create a renewed claims process to distribute more of the money to individual class members." <u>Id.</u> ¶ 45.  After a hearing on the motions, Judge Sullivan denied class counsel's initial motion to modify the Settlement Agreement and also Ms. Keepseagle's separate motion for modification, "and requested that the parties attempt to reach a compromise to address the enormous amount of undistributed settlement funds." <u>Id.</u> ¶ 48.

In December 2015, "class counsel filed Plaintiffs' Unopposed Motion to Modify the Settlement Agreement <u>Cy Pres</u> Provisions" (the "motion to modify").  <u>Id.</u> ¶ 49.  This motion to

4

modify proposed that three class representatives "would each receive $100,000 for their service to the class; Prevailing Claimants under the Settlement Agreement would each receive an additional $18,500[;] the IRS would receive $2,775 on behalf of each Prevailing Claimant; and the remainder of the estimated $380,000,000 would be available for cy pres distribution." Id. ¶ 50. "Ten percent or $38 million would be distributed to unidentified non-profit groups purportedly serving Native American farmers and ranchers prior to November 1, 2010," id., and "[a] trust would be created and endowed with the remaining funds to be distributed over a period not to exceed twenty years," id.

Judge Sullivan issued an Order allowing any Keepseagle class member to provide written comments on the motion to modify and speak at the hearing that would be held on the motion. Order at 1–2, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Dec. 15, 2015). The plaintiff submitted comments in opposition to the proposed modification, see Comments of Class Member William H. Smallwood, Jr. to the Unopposed Motion to Modify Settlement Agreement at 1, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Jan. 20, 2016) ("[The plaintiff] disagrees with the revised proposal . . . to modify the settlement agreement. His view is that the remaining funds should be distributed to himself and all other Prevailing Claimants in equal amounts."), and also spoke at the hearing, see Transcript of Motion Hearing Proceedings Before the Honorable Emmet G. Sullivan, United States District Court Judge at 173–75, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Feb. 4, 2016). On April 20, 2016, Judge Sullivan rejected the plaintiff's position and granted class counsel's motion to modify the Settlement Agreement, see Memorandum Opinion at 29, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Apr. 20, 2016), and that ruling is currently on appeal before the District of Columbia Circuit, see Keepseagle v. Vilsack, No. 16-5189 (D.C. Cir. July 1, 2016).

C.      **This Civil Action**

On February 1, 2016, three days before Judge Sullivan held the hearing on the motion to modify, the plaintiff filed this civil action.  <u>See</u> Compl. at 1.  The plaintiff alleges that the <u>cy pres</u> provisions in the original Settlement Agreement, which authorize payments to non-class members, violate the Appropriations Clause of the United States Constitution and 31 U.S.C. § 1304 (the "Judgment Fund statute"), <u>id.</u> ¶¶ 56–58, 72–75, and thus the government's actions "agreeing to the distribution of settlement funds," <u>id.</u> ¶ 76, violate the Constitution and exceed its statutory authority, <u>id.</u> ¶ 77.  The plaintiff "seeks [his] appointment as lead plaintiff representing . . . [a]ll members of the [<u>Keepseagle</u>] class . . . whose claims were approved under the Non-Judicial Claims Process of the <u>Keepseagle</u> settlement."  <u>Id.</u> ¶ 63.  The defendants seek the dismissal of this case under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[5]

## II.      STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'"  <u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, a district court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because it is "presumed that a cause lies outside [a federal court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, <u>see</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).

---

[5] Because the Court concludes that the plaintiff's case must be dismissed under Rule 12(b)(1), <u>see</u> <u>infra</u> at 7–13, the Court need not consider the defendants' requests for dismissal under Rule 12(b)(6).

In deciding a motion to dismiss based upon a lack of subject matter jurisdiction, a district court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [in] the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, a district court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1998)).

## III.   ANALYSIS

The threshold issue the Court must address is whether the plaintiff satisfies the standing requirement to pursue his claim against the defendants.  In order to establish Article III standing, the plaintiff must demonstrate (1) injury-in-fact, (2) causation, and (3) redressability.  See Lujan, 504 U.S. at 560–61.  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized[] and (b) 'actual or imminent, not conjectural or hypothetical.'" Id. at 560 (citations omitted).  The plaintiff must establish causation by demonstrating a "causal connection between the injury and the conduct complained of," such that the injury is "trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the

independent action of some third party not before the court." Id. (alterations in original) (quoting

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)).  Lastly, the plaintiff must

show redressability by demonstrating a likelihood that "the injury will be 'redressed by a

favorable decision.'"  Id. at 561 (quoting Simon, 426 U.S. at 38).  At the motion to dismiss stage,

the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim [of standing] that is plausible on its face.'"  Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir.

2015) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

 The defendants argue that the plaintiff "fails to establish [ ] an injury[-in-fact] because he

has no legally protected interest in the undistributed Keepseagle Settlement funds," Defs.' Mem.

at 12, because the Settlement Agreement "explicitly limits [the] plaintiff's payment to the

amount he received through the non-adversarial, non-judicial claims process," id., and thus the

plaintiff "cannot now claim any entitlement to more than the payment amount provided for by

the Settlement Agreement itself," id.  Therefore, according to the defendants, because the

"plaintiff retains no legal interest in the settlement fund, the prospective use of that fund for cy

pres payments does not cause him any legal injury." Id. at 13.  The defendants cite to Judge

Sullivan's decision denying the Great Plains Claimant's motion to intervene in Keepseagle, 307

F.R.D. at 246–48, and argue that its holding applies equally here, see Defs.' Mem. at 12–13.

 In that decision, the Great Plains Claimants sought to intervene in Keepseagle to "modify

the [Settlement] Agreement to provide for additional payments to successful claimants."  307

F.R.D. at 246.  Judge Sullivan denied the motion to intervene after determining that the Great

Plains Claimants had "extinguishe[d] [their] legal claim[s]," id. at 247, and thus had no "legal

interest that faces imminent invasion," id. at 248.  Judge Sullivan noted that "[h]is conclusion

[wa]s entirely consistent with the weight of precedent regarding unclaimed settlement funds," id.

at 247, and that "[o]nce a settlement agreement is final, 'all class members who presented their claims received the full payment due them, and those who did not present claims have waived their legal right to do so. Thus, the class has no further legal rights in the fund,'" id. (quoting Wilson v. Southwest Airlines, 880 F.2d 807, 811–12 (5th Cir. 1989)). Judge Sullivan therefore determined that, because "[t]he Great Plains Claimants have received the full value of their claims pursuant to the Agreement and thereby fully satisfied those legal claims," id., "[t]hey cannot now claim a property right in funds that were intended to pay the claims of other class members who did not claim their award," id. at 248.

Notwithstanding Judge Sullivan's holding that prevailing class members whose legal claims have been satisfied retain no legal property interest in the remaining settlement funds, see id. at 247–48, the plaintiff argues that he has established his injury-in-fact because "the [C]ourt must assume the merits of [the plaintiff's] legal arguments—chiefly that the cy pres provisions of the [Settlement] Agreement are unconstitutional and unenforceable," Pl.'s Opp'n at 9, and that assumption "invokes the Settlement Agreement's severability clause,"[6] id., and thus "the remaining provisions [of the Settlement Agreement should be] enforced to the maximum extent possible," id. According to the plaintiff, enforcing the remaining provisions of the Settlement Agreement results in the "remaining settlement funds [becoming] the property of the Prevailing Claimants" because the Settlement Agreement states that settlement funds are "to be used 'for the benefit of the class,'" id. at 10 (quoting Settlement Agreement §§ VII.F, XIV.A.8, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Nov. 1, 2010)). And according to the plaintiff, "[t]his language [in the Settlement Agreement] creates [his] legal property interest in the

---

[6] See Settlement Agreement § XXVI, Keepseagle v. Vilsack, No. 99-3119 (D.D.C. Nov. 1, 2010) ("Should any non-material provision of this Settlement Agreement be found by a court to be invalid or unenforceable, then (A) the validity of other provisions of this Settlement Agreement should not be affected or impaired, and (B) such provisions shall be enforced to the maximum extent possible.").

remaining funds." Id.  To support this proposition, the plaintiff directs the Court to Klier v. Elf

Atochem North America, Inc., 658 F.3d 468 (5th Cir. 2011), where the Fifth Circuit held that

"[t]he district court abused its discretion by ordering a cy pres distribution instead of distributing

the unused [ ] funds to the members [of a subclass]," id. at 480, because "[i]t is apparent from its

structure that the settlement contract . . . contemplated that each subclass would first draw upon

the sums allocated to it," id. at 476.  See Pl.'s Opp'n at 10–11.  The plaintiff argues that "if the

cy pres provisions in Keepseagle are eliminated, then Klier would be indistinguishable and Judge

Sullivan's decision would have been different."  Id. at 13.  The Court disagrees.

In Klier, "[t]he settlement agreement created three subclasses and allocated to each

subclass a portion of the $41.4 million settlement," 658 F.3d at 472, but the settlement agreement

itself did not contain a cy pres provision, id. at 476.  After approximately $830,000 of the funds

for Subclass B went "unused," id. at 472, and it became clear "that an additional distribution to

the members of Subclass B was not economically feasible," id. at 473, the "district court asked

the parties for proposals for [the] distribution of remaining funds," id.  The defendant proposed a

cy pres distribution of the funds to local charities, which Klier, a member of Subclass A,

opposed, arguing instead that "an additional distribution to the members of Subclass A was

economically feasible and would be equitable."  Id. at 472, 473.  After "the district court ordered

distribution of the remaining funds to . . . charities," Klier appealed.  Id. at 473.

The Fifth Circuit began its analysis by noting, among other things, that a "court cannot

modify the bargained-for terms of the settlement agreement," id. at 475, and that "[c]y pres

comes on stage only to rescue the objectives of the settlement when the agreement fails to do

so," id. at 476.  The Fifth Circuit noted that "[t]his is not a case where the settlement agreement

itself provides that residual funds shall be distributed via cy pres," id., and found that "the district

court's decision to distribute the unused funds via <u>cy pres</u> [found] no support in the text of the settlement documents," <u>id.</u> at 477.  Furthermore, the Fifth Circuit noted that the settlement agreement provided that "[t]he Settlement Administrator may petition the District Court for reallocation of available funds among the [subclasses] on a showing of good cause if . . . he determines that considerations of equity and fairness require reallocation," a request that the Settlement Administrator had made, but the district court had denied.  <u>Id.</u>

 Judge Sullivan already considered and distinguished <u>Klier</u> in his determination that the Great Plains Claimants did not demonstrate an injury-in-fact.  <u>See</u> <u>Keepseagle</u>, 307 F.R.D. at 248.  Judge Sullivan noted that <u>Klier</u>

> [wa]s not a case where the settlement agreement itself provide[d] that residual funds shall be distributed via <u>cy pres</u>, and the Fifth Circuit noted that the relevant provisions of the Agreement shape the property interest created by the Agreement. The decision, moreover, related to the use of <u>cy pres</u> even though the excess funds could have been used to pay claims that were due to another subclass under the Agreement.  Here, any property interest that was shaped or created by the agreement was limited by the Agreement's provisions making the Track A maximum $50,000, and providing for a <u>cy pres</u> distribution of leftover funds from the outset.

<u>Id.</u> at 248 (footnote, citations, and internal quotation marks omitted).

 The Court agrees with Judge Sullivan's analysis and concludes that, even "if the <u>cy pres</u> provisions in <u>Keepseagle</u> are eliminated" for purposes of the Court's standing analysis, as the plaintiff urges, <u>see</u> Pl.'s Opp'n at 10–11, the terms of the Settlement Agreement still limit the plaintiff's property interest to the monetary caps set forth under Track A or Track B, <u>see</u> Settlement Agreement § IX.F.6, <u>Keepseagle v. Vilsack</u>, No. 99-3119 (D.D.C. Nov. 1, 2010) ("Notwithstanding any other provision, no Class Member shall receive a total cash payment of more than his or her Provisional Track A Award or Provisional Track B Award.").  The Court's analysis is dictated by the terms of the <u>Keepseagle</u> Settlement Agreement, which does not

contain any provisions like those in the <u>Klier</u> settlement agreement that authorized the district court to "make changes to the terms . . . as necessary for the benefit of the Settlement Class Members" and allowed "[t]he Settlement Administrator [to] petition the District Court for a reallocation of available funds [to the class members]." <u>Klier</u>, 658 F.3d at 477.  Therefore, the language in the Settlement Agreement here cannot, as the plaintiff contends, "create[] [the] [p]laintiff's legal property interest in the remaining funds," Pl.'s Opp'n at 10, because, even if the <u>cy pres</u> provisions did not exist, the language in the Settlement Agreement limiting class members' awards to those provided by Track A and Track B dictates that the unclaimed funds would still constitute "funds that were intended to pay the claims of <u>other</u> class members who did not claim their award," <u>Keepseagle</u>, 307 F.R.D. at 248 (emphasis added), and the plaintiff has no property right in the unclaimed funds because he, like the Great Plains Claimants, extinguished his legal claim when he received his settlement award, <u>see id.</u>; <u>see also</u> Compl. ¶10.[7] Furthermore, the Court is not convinced that the two Settlement Agreement provisions stating generally that the settlement funds are to be used "for the benefit of the class," <u>see</u> Settlement Agreement §§ VII.F, XIV.A.8, <u>Keepseagle v. Vilsack</u>, No. 99-3119 (D.D.C. Nov. 1, 2010), alter this conclusion because, as stated above, a more specific provision states that, "[n]otwithstanding any other provision, no Class Member shall receive a total cash payment of more than his or her Provisional Track A Award or Provisional Track B Award," <u>id.</u> § IX.F.6; <u>see</u> <u>GenopsGroup LLC v. Pub. House Invs. LLC</u>, 67 F. Supp. 3d 338, 343 (D.D.C. 2014) (reiterating the "familiar principle of contract interpretation, that 'specific terms and exact terms are given greater weight

---

[7] The plaintiff also cites <u>Slipchenko v. Brunel Energy, Inc.</u>, No. H-11-1465, 2015 WL 5332219 (S.D. Tex. 2015), for the proposition that the unclaimed settlement funds are property of the prevailing claimants.  However, <u>Slipchenko</u> is distinguishable from the present case because the settlement agreement in <u>Slipchenko</u> contained a provision allowing remaining settlement funds to be reallocated among class members on a <u>pro rata</u> basis.  <u>See id.</u> at *1 ("[A]ny remaining amounts may be Re-Allocated among Class Member[s] . . . on the same <u>pro rata</u> formula as set forth above . . . .").

than general language'" (quoting <u>Wash. Auto. Co. v. 1828 L St. Assocs.</u>, 906 A.2d 869, 880

(D.C. 2006)).  Accordingly, because the plaintiff extinguished his legal claim against the USDA

by participating in the claims process and receiving an award as set forth in the Settlement

Agreement, Compl. ¶ 10, the plaintiff has no "legal interest that faces imminent invasion,"

<u>Keepseagle</u>, 307 F.R.D. at 248.  Thus, the plaintiff has failed to demonstrate an injury-in-fact.[8]

## IV.    CONCLUSION

Because the plaintiff has not demonstrated an injury-in-fact sufficient to confer standing,

the Court grants the government's motion to dismiss the complaint in this case because the Court

lacks the requisite subject matter jurisdiction to consider the merits of the plaintiff's claims.

Also, because the Court concludes that it must dismiss with prejudice the plaintiff's complaint

for lack of subject matter jurisdiction, the Court need not consider the USDA's alternative

argument to dismiss the complaint for failure to state a claim under Rule 12(b)(6),[9] and the

Plaintiff's Motion for Class Certification and Appointment of Class Counsel is denied as moot.

---

[8] Because the Court decides that the plaintiff lacks the requisite injury-in-fact to pursue his claim against the defendants, it need not consider the elements of causation and redressability.  However, the Court agrees with Judge Sullivan's conclusion that "any injury the Great Plains Claimants may suffer by virtue of not receiving additional payments beyond those received to satisfy their claims is not causally linked to an action of the defendant in this case; rather it is a product of their assent to and participation in the Agreement," <u>Keepseagle</u>, 307 F.R.D. at 248 n.9, and concludes that the plaintiff similarly has not established causation.  As for redressability, the Court concludes that it is unable to redress the plaintiff's injury because Judge Sullivan has already upheld the original <u>cy pres</u> provisions of the Settlement Agreement, <u>see</u> <u>Keepseagle v. Vilsack</u>, 118 F. Supp. 3d 98, 122 (D.D.C. 2015) (noting that, despite "[t]he truly terrible facts of the case before this Court [that] arguably cry out for a resolution that does not result in $380,000,000 being distributed as <u>cy pres</u> where class members are readily identifiable and may either prove their previously unsuccessful claims or prove that they suffered damages in excess of what they already received[,] . . . the Court is bound to the final judgment proposed by the parties and approved by the Court after full compliance with Rule 23 procedures—an approval to which no class member objected in relevant part or appealed from at all"), and this Court refuses under <u>res judicata</u> and collateral estoppel principles to second-guess an order issued by another member of this Court.

[9] Furthermore, the Court notes that the plaintiff may have a mootness problem, given that his complaint challenges the <u>cy pres</u> provisions of the original Settlement Agreement, which have since been modified.  <u>See</u> Memorandum Opinion at 1–2, <u>Keepseagle v. Vilsack</u>, No. 99-3119 (D.D.C. Apr. 20, 2016) (approving the modification of the <u>cy pres</u> provisions).  That modification is currently on appeal before the District of Columbia Circuit, where counsel for the plaintiff in this case is representing another <u>Keepseagle</u> class member who is challenging the modified <u>cy pres</u> provisions on grounds similar to those advanced by the plaintiff in this case.  <u>See</u> Brief for Plaintiff-Appellant Keith

(continued . . . )

**SO ORDERED** this 30th day of January, 2017.[10]

REGGIE B. WALTON
United States District Judge

---

( . . . continued)
Mandan at 19, Keepseagle v. Vilsack, Nos. 16-5189, 16-5190 (D.C. Cir. Oct. 24, 2016) ("The district court committed an error of law in approving the Addendum, which in violation of the Appropriations Clause, the Judgment Fund Act, and the settlements authority statute, allows money taken from the Judgment Fund to be distributed via cy pres to uninjured non-parties with no claims against the United States.").

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.